# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

|   |   |   |
|---|---|---|
| JAMES L. PENA,<br>　　　Plaintiff, | :<br>:<br>: | No. 3:19-cv-825 (KAD) |
| v. | :<br>: |   |
| COOK, et al.,<br>　　　Defendants. | :<br>:<br>: |   |

## INITIAL REVIEW ORDER

**Preliminary Statement**

　　　Plaintiff, James L. Pena ("Pena"), currently confined at Corrigan-Radgowski Correctional Center in Uncasville, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983. In his jurisdictional statement, Pena also references 42 U.S.C. § 1985 and § 1986. Pena asserts federal law claims for deliberate indifference to safety and failure to protect him from harm, retaliation, and supervisory liability against defendants, Commissioner Cook, Security Risk Group ("SRG") Coordinator Papoosha, Warden Cocerrella, Deputy Warden Cotta, SRG Unit Manager Michaud, Disciplinary Reporting Officer Nemeth, Director of Offender Classification and Population Management Maiga[1], and Director of Security A. Santiago. He also asserts state law claims for negligence and false imprisonment. Pena seeks damages and injunctive relief against the

---

[1] Pena identified this defendant, the director of Offender Classification and Population Management, as Miago in the case caption and Miaga in the body of the complaint. Doc. No. 1, ¶ 12. The Department of Correction website, https://portal.ct.gov/DOC/Org/Offender-Classification-and-Population-Management, indicated that the director is David Maiga. The Court will use the correct spelling.

defendants in their individual and official capacities. The complaint was received on May 30, 2019, and Pena's motion to proceed *in forma pauperis* was granted on June 19, 2019.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations[2]**

On November 28, 2018, Pena was sentenced to a five-year term of imprisonment on charges of sexual assault in the second degree, violation of probation, and possession of a

---

[2] Pena includes allegations relating to claims he is asserting in two other pending federal cases, *Pena v. Semple*, No. 3:19-cv-261 (KAD), and *Pena v. Aldi*, No. 3:19-cv-124 (KAD) both of which pertain to his time as a pretrial detainee. The Court does not reiterate those allegations here because any claims purportedly brought herein as arising from those allegations are precluded.

firearm. Doc. No. 1, ¶ 24. The next day, he was transferred to a much more restrictive housing unit at Walker Correctional Institution ("Walker"). *Id.*, ¶ 25. Pena requested placement in protective custody ("PC") because he had been assaulted by an SRG member shortly before his transfer. *Id.*, ¶¶ 26, 23. On January 6, 2019, Pena was placed on "rec alone status." Pena considers this status similar to PC within the SRG block at Walker. The November 14, 2018 assault was based on Pena being labeled a "plate," his sexual offense, and the fact that he was not an active gang member. *Id.*, ¶ 27.

On February 4, 2019, Pena was transferred to Massachusetts on pending drug charges. He was housed in general population there for about three weeks. *Id.*, ¶ 28. Pena returned to Connecticut on February 25, 2019 and was placed in a Restrictive Housing Unit ("RHU") at Walker. The placement was because Pena "never completed the Program on my prior sentence." In RHU, Pena was required to undergo purposeless strip searches, eat in his cell, and recreate outside in harsh weather. He also was permitted only three phone calls per week. Pena was required to endure these conditions even though he had no disciplinary charges and no SRG ticket or hearing. *Id.*, ¶ 29.

Pena told the unit manager at Walker about threats and extortion attempts and requested PC placement. Pena was placed on rec alone status for his safety. *Id.*, ¶ 30. On March 28, 2019, Pena was removed from rec alone status and transferred to Corrigan-Radgowski Correctional Center ("Corrigan"). This was the facility where Pena was assaulted as a pretrial detainee. *Id.*, ¶31. Pena believes that defendants Maiga and Santiago removed him from rec alone status and transferred him to Corrigan in retaliation for his filing a federal lawsuit against them. *Id.*, ¶ 32.

On March 29, 2019, Pena submitted an Inmate Request to defendants Cook, Papoosha,

3

Michaud, Cocerrella, and Cotta stating that his life was in danger because he was still labelled a "plate." He had received multiple threats at Corrigan. Pena asked to be returned to Walker, placed on rec alone status, or placed in PC. *Id.*, ¶ 33. Only defendant Michaud responded to the request. *Id.* On April 2, 2019, defendant Michaud stated, that he had reviewed surveillance footage and it appeared that Pena was "socializing fine." He advised Pena to tell him if things changed. *Id.*, ¶ 34.

On April 12, 2019, Pena submitted a second request to defendants Cocerrella, Cotta, Michaud, and Cook stating that his life was being threatened and he was being extorted. He reported that gang members knew that he was a "plate," was previously on rec alone status, and had a sex charge. Pena said that it was only a matter of time before he was assaulted again. He was afraid for his life and requested PC placement or rec alone status to ensure his safety. In response, defendant Michaud visited Pena and told him to "stop b**ching and man up." *Id.*, ¶ 35.

On April 28, 2019, Pena was assaulted in the unit day room by a member of the SRG Bloods. *Id.*, ¶ 41. He was struck repeatedly. As a result, Pena suffers severe headaches and back pain, PTSD, anxiety, and paranoia. *Id.*, ¶ 43. Pena told defendant Nemeth, the disciplinary investigator, that he had warned correctional officials of the threat and explained that he was struck from behind and assaulted by an inmate three times his size. However, defendant Nemeth persuaded Pena to plead guilty to the disciplinary ticket by threatening more severe sanctions if he did not. *Id.*, ¶ 44. Pena continues to be housed at Corrigan and has not been placed in PC or on rec alone status. *Id.*, ¶ 46.

Pena received a disciplinary report for submitting two grievances. The first grievance

4

complained that defendants Michaud, Cocerrella, and Cotta failed to fulfill their duties, and the second grievance stating that defendants Cook, Cocerrella, Cotta, and Michaud ignored a potential threat to him. Pena's sanctions on this charge included loss of 10 days of good time credit. *Id.*, ¶ 47.

**Discussion**

Pena asserts seven claims: (1) all defendant subjected him to unconstitutional conditions of confinement in violation of the Eighth Amendment; (2) defendants Santiago and Maiga retaliated against him for exercising his First Amendment rights[3]; (3) defendants Cook, Cocerrella, Cotta, Maiga, Santiago, and Michaud subjected him to excessive and purposeless strip searches in violation of the Fourth Amendment, (4) defendants Cook, Cocerrella, Cotta, Maiga, Santaigo, Michaud, and Papoosha failed to protect him from harm and were deliberately indifferent to his safety as actors and supervisors in violation of the Eighth Amendment, (5) defendants Cook, Papoosha, Cocerrella, Cotta, Michaud, and Maiga were negligent in performing their duties, (6) defendant Nemeth violated his Eighth Amendment rights, and (7) all defendants subjected him to false imprisonment under state law by confining him in the RHU under harsh conditions.

Pena includes in this case allegations relating to his confinement as a pretrial detainee. All claims concerning his classification and confinement as SRG while a pretrial detainee, the conditions of his confinement, violation of privacy through excessive strip searches and denial of access to the courts as a pretrial detainee, are pending before this court at *Pena v. Semple*, No.

---

[3] Pena refers to his retaliation claim as implicating the 8th Amendment but it is clearly premised on his exercise of his First Amendment rights.

3:19-cv-261 (KAD). Pena has a second pending case, *Pena v. Aldi*, No. 3:19-cv-124 (KAD), in which he asserts claims for his treatment from January 2018 through November 2018, including failure to protect him from assault, again while a pretrial detainee. To the extent that Pena attempts to bring, in this action, the same claims already asserted in his two other pending actions, those claims are barred by the prior pending action doctrine. *See, Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000). Unless there are special circumstances giving priority to the second case, the district court should dismiss the second case as duplicative of the earlier case. *Taylor v. Rodriguez*, 238 F.3d 188, 197 (2d Cir. 2001). The district court may apply the prior pending action doctrine to claims within a lawsuit. *See Ziemba v. Clark*, 167 F. App'x 831, 832 (2d Cir. 2006) (district court properly dismissed claims included in previously filed lawsuit under prior pending action doctrine).

Notably, Pena attempted to amend his complaint in *Pena v. Semple*, to add the defendants named herein and to assert claims arising after he was sentenced. The Court denied leave to amend because *Pena v. Semple* concerned Pena's time as a pretrial detainee and involved different defendants. The Court advised Pena that he could pursue his claims as a sentenced inmate in a separate action. *See Pena v. Semple*, No. 3:19-cv-261 (KAD) (Doc. No. 14, Order re Amended Complaint and Motion for TRO, filed May 17, 2019). Accordingly, any claims included herein stemming from Pena's time as a pretrial detainee are dismissed.

**Deliberate Indifference to Safety/Failure to Protect**

Pena asserts that defendants Cook, Cocerrella, Cotta, Maiga, Santiago, Michaud, and Papoosha failed to protect him from harm and were deliberately indifferent to his safety, as actors and supervisors, in violation of the Eighth Amendment. Specifically, he alleges that after

6

his transfer to Corrigan, he submitted a request to defendants Cook, Papoosha, Michaud, Cocerrella, and Cotta explaining that he was in danger and had received threats. Defendant Michaud responded but disagreed with Pena's assessment. Pena submitted a second request to defendants Cook, Michaud, Cocerrella and Cotta. Again, defendant Michaud responded to the request and ignored his complaints. Doc. No. 1, ¶¶ 33-35. Pena was assaulted about two weeks after the second request. *Id.*, ¶ 41.

To state a claim for deliberate indifference to health or safety or failure to protect him from harm, Pena must show that the conditions of his confinement posed a substantial risk of serious harm and that the defendants were deliberately indifferent to his safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference exists when the defendant knows of and disregards an excessive risk to the plaintiff's safety. *See id.* at 837; *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010) (explaining that defendants must be aware of facts supporting an inference that harm would occur and must actually draw that inference).

Pena alleges that he sent inmate requests informing the defendants of the threats to his safety. Defendant Michaud acknowledged receipt of the requests but disregarded the threats. Defendants Cook, Cocerrella, Cotta and Papoosha are supervisory officials. Sending them inmate requests is sufficient at this stage of litigation to support an inference that they received and read the requests and, therefore, were aware of Pena's concerns. *See Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013) (at pleading stage, dismissal for lack of allegations that supervisory official received and read letter not warranted). After these defendants took no action in response to his requests, Pena was assaulted. These allegations are sufficient to state a plausible claim against these defendants. The claim for deliberate indifference to safety or failure

7

to protect will proceed against defendants Cook, Cocerrella, Cotta, Michaud, and Papoosha.[4]

**Conditions of Confinement**

In addition to the 8th Amendment claim arising out of the defendants' alleged failure to protect Pena, Pena also asserts that all defendants subjected him to unconstitutional conditions of confinement in violation of the Eighth Amendment. Specifically, he alleges that he was required to undergo purposeless strip searches, eat in his cell, and recreate outside in harsh weather. He also was permitted only three phone calls per week. Doc. No. 1, ¶ 29.

To state an Eighth Amendment claim for unconstitutional conditions of confinement, Pena must allege that: "(1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind ..., such as deliberate indifference to inmate health or safety." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks and citations omitted).

To satisfy the objective component of the test, Pena must allege facts showing that the conditions of confinement deprived him of a "basis human needs," such as "food, clothing, medical care, and reasonable safety." *Phelps v. Kapnolas,* 308 F.3d 180, 185 (2d Cir.2002) (per curiam). Conditions may be considered in the aggregate "only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter,* 501 U.S. 294, 304 (1991) (noting that "low cell

---

[4] Although Pena asserts this claim against Maiga and Santiago at paragraph 51 of his Complaint, he does not include any factual allegations which would support this claim as to these defendants. *See, Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006)*(It is a Plaintiff's obligation to allege each defendant's personal involvement in the constitutional deprivation.)

temperature at night combined with a failure to issue blankets" may establish an Eighth Amendment violation). "[T]here is no static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency." *Jabbar v. Fischer,* 683 F.3d 54, 57 (2d Cir.2012) (citation and internal quotation marks omitted). Whether incarceration in RHU rises to the level of an Eighth Amendment violation also involves the duration of that confinement. *Gonzalez v. Hasty*, 802 F.3d 212, 214 (2d Cir. 2015) (noting that the length of confinement in restrictive housing cannot be ignored when evaluating an Eighth Amendment conditions claim).

Subjectively, Pena must show that the defendants were more than negligent. *Farmer v. Brennan,* 511 U.S. 825, 835 (1994). "The prison official must know of, and disregard, an excessive risk to inmate health or safety." *Jabbar*, 683 F.3d at 57. Pena may satisfy this component by presenting evidence that a risk was "obvious or otherwise must have been known to a defendant." *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003). To support this claim, Pena identifies four conditions -- strip searches, eating in his cell, limited phone calls, and recreating outside in harsh weather. He does not identify any basic human need that was withheld or of which he was deprived by these conditions. Nor does he indicate how long he was subject to the conditions. Thus, the claim, as alleged, is not cognizable as an Eighth Amendment violation. However, the Court will afford Pena an opportunity to file an amended complaint to re-assert this claim to address these deficiencies if he is able.[5]

---

[5] Pena includes an 8th Amendment claim against Defendant Nemeth for purportedly coercing a guilty plea to the D.R. The Court can conceive of no theory under which such allegations, even if factually supported, would constitute an 8th Amendment violation as set forth above. Pena does not, therefore, have leave to replead against Nemeth.

**Retaliation**

Pena alleges defendants Santiago and Maiga removed him from rec alone status and transferred him to Corrigan on March 28, 2019 as retaliation because he had filed a federal lawsuit against them. Doc. No. 1, ¶ 32. To state a First Amendment retaliation claim, Pena must allege (1) that he engaged in protected activity; (2) that the defendant took adverse action against him, and (3) that there was a causal connection between the protected activity and the adverse action. *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018).

Pena alleges that he filed a lawsuit against defendants Santiago and Maiga and indeed, these defendants are named in *Pena v. Semple*, No. 3:19-cv-261 (KAD). Filing lawsuits is protected activity. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (seeking redress of grievances in judicial or administrative forum is protected activity). The court will assume, without holding, that the transfer to Corrigan could be considered adverse action.

To establish a causal connection between the lawsuit and his transfer, Pena appears to rely on temporal proximity. He includes no other allegations from which a retaliatory motive might be inferred. The Complaint in *Pena v. Semple* was filed on February 22, 2019, about a month before his transfer. However, the Initial Review Order directing service of the complaint was not filed until March 22, 2019, and requests for waiver of service of summons were not mailed to defendants Santiago and Maiga until April 1, 2019. *See Pena v. Semple*, No. 3:19-cv-261 (KAD) (Doc. Nos. 7, 10, 11). Thus, defendants Santiago and Maiga had not been served with process until after the transfer to Corrigan. Accordingly, absent allegations from which the defendants' knowledge of the suit might be inferred, the retaliation claim fails. As Pena alleges no facts from which the causal connection between his federal lawsuit and his transfer can be

inferred, he fails to state a cognizable retaliation claim against defendants Santiago and Maiga. Accordingly, this claim is dismissed without prejudice. Pena may file an amended complaint if he can allege facts supporting a finding or inference that defendants Maiga and Santiago knew about the prior lawsuit before the transfer to Corrigan.

**Strip Searches**

Pena argues that defendants Cook, Cocerrella, Cotta, Maiga, Santiago, and Michaud violated his Fourth Amendment rights by subjecting him to excessive and purposeless strip searches. The Fourth Amendment protects prisoners from unreasonable searches. *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application" and each case "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Id.* at 559. Courts must consider, for example: (1) the scope of the particular intrusion; (2) the manner in which the search is conducted; (3) the justification for initiating it, and (4) the place in which it is conducted. *Id.*; *see also Harris v. Miller*, 818 F.3d 49, 63 (2d Cir. 2016) (reiterating that courts must evaluate searches of inmates under the four *Bell* criteria).

To state a cognizable Fourth Amendment claim, Pena must allege facts suggesting that the strip searches did not serve any legitimate penological purpose, or that each search was specifically "designed to intimidate, harass or punish." *See Green v. Martin*, 224 F. Supp. 3d 154, 164 (D. Conn. 2016) (citations and internal quotation marks omitted). Pena alleges no facts to support this claim. He merely concludes that the searches were excessive and purposeless. Conclusory allegations do not state a plausible claim for relief. *Iqbal*, 556 U.S. at 678.

Pena's Fourth Amendment claim is dismissed without prejudice. Pena may file an

11

amended complaint to reassert this claim if he can allege facts supporting the four *Bell* criteria set forth above.

**Negligence**

Pena contends that defendants Cook, Papoosha, Cocerrella, Cotta, Michaud, and Maiga were negligent in performing their duties. Connecticut law provides, "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Conn. Gen. Stat. § 4–165. Connecticut courts note that "wanton, reckless, or malicious" acts go beyond gross negligence, and denote "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Martin v. Brady*, 261 Conn. 372, 379, 802 A.2d 814, 819 (2002) (internal quotation marks and citation omitted). Thus, state employees are not "personally liable for their negligent actions performed within the scope of their employment." *Miller v. Egan*, 265 Conn. 301, 319, 828 A.2d 549, 561 (2003). The negligence claims against defendants Cook, Papoosha, Corcerrella, Cotta, Michaud, and Maiga in their individual capacities are barred by Conn. Gen. Stat. § 4-165 and are dismissed under 28 U.S.C. § 1915A(b)(2).

Further, to the extent that Pena asserts a claim of negligence against these defendants in their official capacities, the request for monetary damages is barred by the doctrine of sovereign immunity, which "protects state officials and employees from lawsuits resulting from performance of their duty." *Hultman v. Blumenthal*, 67 Conn. App. 613, 620, 787 A.2d 666, 672, *cert. denied*, 259 Conn. 929, 793 A.2d 253 (2002). The doctrine applies both to lawsuits seeking monetary damages against the state and to lawsuits seeking monetary damages against state officials in their official capacities. *See Miller*, 265 Conn. at 313, 828 A.2d at 558 ("a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state") (internal quotation

marks and citation omitted). Pena alleges no facts suggesting that the defendants in their official capacities have waived sovereign immunity to suits for negligence in their official capacities. Thus, any negligence claims against the defendants in their official capacities also are dismissed under 28 U.S.C. § 1915A(b)(2).

**False Imprisonment**

Pena contends that all defendants subjected him to false imprisonment under state law by confining him in the RHU under harsh conditions.[6] Connecticut law defines "false arrest" or "false imprisonment" as "the unlawful restraint by one person of the physical liberty of another." *Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007) (quoting *Outlaw v. City of Meriden*, 43 Conn. App. 387, 392 (1996)).

Pena had been confined within the Department of Correction as a pretrial detainee, on the charge for which he was convicted in November 2018, since October 6, 2017. Doc. No. 1., ¶ 18. He alleges that he was held in restrictive housing beginning on November 1, 2017. *Id.*, ¶ 21. Then, on November 29, 2018, the day after sentencing, he was transferred to a much more restrictive unit. *Id.*, ¶ 25. As explained above, Pena is pursuing his claims relating to confinement as a pretrial detainee in his other cases. Thus, the Court considers the false imprisonment claim in this case to be based on the November 2018 transfer only.

Because Pena had been confined for over a year when this transfer occurred, no defendant in this case could have deprived Pena of his liberty. *See Mansa v. United States*, No. 3:16-cv-644(VAB), 2017 WL 1239142, at *5 (D. Conn. Mar. 30, 2017) (dismissing claim for false imprisonment based on remand from halfway house to prison, because plaintiff was legally confined

---

[6] This claim appears to be a reiteration of his 8th Amendment claim under a different title.

and Bureau of Prisons had authority to transfer inmate to any correctional facility); *see also Walker v. Sankhi*, 494 F. App'x. 140, 143 (2d Cir. 2012) (summary order) ("[E]ven if he could overcome the presumption of probable cause, [plaintiff] could not have suffered a deprivation of liberty as a result of the Bellamy burglary charge because, throughout the pendency of that charge, he was already in custody, and remained in custody, for a completely separate burglary charge....") (citation omitted). "[L]iability for false imprisonment never rises or falls based on the conditions under which he is held...." *McGowan v. United States*, 94 F. Supp. 3d 382, 391 (E.D.N.Y. 2015). Since Pena was already in custody, he fails to state a cognizable false imprisonment claim under state law based on the November 2018 transfer to more restrictive conditions. The false imprisonment claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**42 U.S.C. §§ 1985, 1986**

In his jurisdictional statement Pena states that he brings this action pursuant to 42 U.S.C. §§ 1983, 1985, 1986. Doc. No. 1, ¶ 4. Section 1985 deals with conspiracies. Pena does not identify which subsection of section 1985 was violated but only one is even possibly implicated, Section 1985(3).[7] Section 1985(3) prohibits conspiracies motivated by racial or otherwise class-based invidious discriminatory animus. *Iqbal v. Hasty*, 490 F.3d 143, 176 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 62 (2009). Section 1985(3) may not be construed as a "general federal tort law"; it does not provide a cause of action based on the denial of due process or any other constitutional right. *Griffin v. Breckenridge*, 403 U.S. 88, 101-02

---

[7] Section 1985(1) prohibits conspiracies to prevent federal officials from performing their duties, and section 1985(2) prohibits conspiracies intending to deter witnesses from participating in state or federal judicial proceedings. As Pena is not a federal official, and his claims are not related to the participation of witnesses in judicial proceedings, the first two subsections of section 1985 have no application here.

14

(1971). Pena alleges no facts supporting a racial or class-based conspiracy in his Complaint. Thus, he fails to state a plausible section 1985(3) claim.

Lastly, section 1986 provides no substantive rights; it provides a remedy for the violation of section 1985. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 222 n.28 (1970) (Brennan, J., concurring in party and dissenting in part). Thus, a prerequisite for an actionable claim under section 1986 is a viable claim under section 1985. *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000), *overruled in part on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002). Any section 1985 or section 1986 claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Request for Relief**

Pena seeks damages from the defendants in individual and official capacities. The Eleventh Amendment bars claims for damages against state officials in their official capacities unless the state has waived this immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity, *Quern v. Jordan*, 440 U.S. 332, 343 (1979), and Pena has alleged no facts suggesting that Connecticut has waived this immunity. Accordingly, all claims for damages against the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

**Orders**

For all the foregoing reasons: the claim against defendant Nemeth; claims under 42 U.S.C. §§ 1985 and 1986; state law claims for negligence; state law claims for false imprisonment, and all claims for damages against the defendants in official capacity are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b). The Eighth Amendment conditions of

15

confinement (not based upon a failure to protect), the retaliation claims against defendants Santiago and Maiga, and Fourth Amendment strip search claims are **DISMISSED** without prejudice to filing an amended complaint to re-assert these claims provided Pena can allege facts to address the deficiencies identified above.

The case will proceed on Pena's 8th Amendment claim for failure to protect and/or deliberate indifference to safety against defendants Cook, Cocerrella, Cotta, Michaud, and Papoosha. Any amended complaint shall include this 8th Amendment claim in addition to the re-asserted claims and shall be filed on or before July 24, 2019. If an amended complaint is not timely filed, the conditions of confinement, retaliation and strip search claims will be dismissed.

The Court enters the following additional orders:

(1) **The Clerk shall** verify the current work address for defendants Cook, Cocerrella, Cotta, Michaud, and Papoosha with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to each defendant at the address provided on or before July 15, 2019, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the Complaint on defendants Cook, Cocerrella, Cotta, Michaud, and Papoosha in their official

capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, on or before July 15, 2019 and to file a return of service on or before July 24, 2019.

(3) **The Clerk shall** send Pena a copy of this Order.

(4) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by January 24, 2020. Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed on or before February 24, 2020.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Pena changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Pena must give notice of a new address even if he is incarcerated. Pena should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Pena has more than one pending case, he should indicate all the case numbers in the notification of change of address. Pena should also notify the defendants or the attorney for the defendants of his new address.

(9)     Pena shall utilize the Prisoner Efiling Program when filing documents with the court.  Pena is advised that the Program may be used only to file documents with the court.  As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10)     The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which shall be docketed herewith.  The Clerk shall send a copy of the Standing Order to Pena.

**SO ORDERED** at Bridgeport, Connecticut, this 24th day of June 2019.

/s/
Kari A. Dooley
United States District Judge