## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JAMES L. PENA, | : | |
| Plaintiff, | : | No. 3:19-cv-825 (KAD) |
| | : | |
| v. | : | |
| | : | |
| COOK, et al., | : | |
| Defendants. | : | |

## ORDER RE AMENDED COMPLAINT

**Preliminary Statement**

Plaintiff, James L. Pena ("Pena"), currently confined at Corrigan-Radgowski Correctional

Center in Uncasville, Connecticut, filed this action *pro se* under 42 U.S.C. § 1983.  On June 24,

2019, the Court filed an Initial Review Order dismissing: all claims against defendant Nemeth;

the Eighth Amendment conditions of confinement claims which were not based on a failure to

protect; the First Amendment retaliation claims against defendants Santiago and Maiga; the

Fourth Amendment strip search claims; all claims under 42 U.S.C. §§ 1985 and 1986; and state

law claims for negligence and false imprisonment.  The Court allowed the case to proceed on

Pena's Eighth Amendment claim for failure to protect and/or deliberate indifference to safety

against defendants Cook, Cocerrella, Cotta, Michaud, and Papoosha.  Doc. No. 10 at 15-16.  The

Court also afforded Pena an opportunity to amend his complaint to re-assert the conditions of

confinement, retaliation and strip search claims which were initially dismissed.  *Id.* at 16.

On July 8, 2019, Pena filed an Amended Complaint adding two defendants, Mental

Health Worker J. Brennan and Dr. Gagne.   He asserts five claims:  (1) all defendants subjected

him to an environment that placed him in harm and caused him to experience physical and mental hardship; (2) defendants Santiago, Maiga, and Brennan retaliated against him; (3) defendants Cook, Cocerrella, Cotta, Maiga, Santiago, Michaud, and Papoosha failed to protect him or were deliberately indifferent to his safety; (4) defendants Gagne and Brennan were deliberately indifferent to his mental health needs; and (5) all defendants subjected him to false imprisonment by confining him in a restrictive housing unit.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations[1]**

On November 26, 2018, Pena was sentenced to a five-year term of imprisonment on charges of sexual assault in the second degree, violation of probation, possession of a firearm, and assault on a public safety officer. Doc. No. 13, ¶ 21. Two days later, he was transferred to a much more restrictive housing unit at Walker Correctional Institution ("Walker"). *Id.*, ¶ 22. Pena requested placement in protective custody ("PC") because he feared for his safety. *Id.*, ¶ 23.

On January 6, 2019, Pena was placed on "rec alone status." Pena considers this status similar to PC within the Security Risk Group ("SRG") block at Walker. Pena alleges that he had been labeled a "plate" because his conviction was for a sexual offense and he was not an active gang member. *Id.*

On February 4, 2019, Pena was transferred to Massachusetts on pending drug charges. He was housed in general population there for about three weeks. *Id.*, ¶ 24. Pena returned to Connecticut on February 25, 2019 and was placed in a Restrictive Housing Unit ("RHU") at Walker. The placement was because Pena "never completed the Program on my prior sentence." In RHU, Pena was required to undergo a strip search whenever he left his cell, eat in his cell, and recreate outside in harsh weather. He also was permitted only three phone calls per week. Pena was required to endure these conditions even though he had no disciplinary charges and no hearing. *Id.*, ¶ 25.

---

[1] As in the Initial Review Order, the Court does not include allegations relating to claims Pena asserts in two other pending federal cases, *Pena v. Semple*, No. 3:19-cv-261 (KAD), and *Pena v. Aldi*, No. 3:19-cv-124 (KAD). .

Pena told the unit manager at Walker about threats and extortion attempts and requested PC placement. Pena was placed on rec alone status for his safety. *Id.*, ¶ 26. On February 25, 2019, a mental health provider diagnosed Pena with a mental health issue and prescribed medication. *Id.*, ¶ 27. Also in February 2019, Pena had a "slight disputation" with defendants Maiga and Santiago while they were touring his housing unit. During the conversation Pena stated, "that's why I'm suing your a\*\*." *Id.*, ¶ 28.

On March 28, 2019, Pena was removed from rec alone status and transferred to Corrigan-Radgowski Correctional Center ("Corrigan"). This was the facility where, on November 14, 2018, Pena was assaulted by a member of the SRG Bloods. *Id.*, ¶ 29. Pena believes that defendants Maiga and Santaigo removed him from rec alone status and transferred him to Corrigan because they became aware, during the "disputation" that Pena had filed a lawsuit against them. *Id.*, ¶ 31.

On March 29, 2019, Pena submitted Inmate Requests to defendants Cook, Papoosha, Michaud, Cocerrella, and Cotta stating that his life was in danger because he was still labelled a "plate." He had received multiple threats at Corrigan. Pena asked to be returned to Walker, placed on rec alone status, or placed in PC. *Id.*, ¶ 31 (the second paragraph numbered 31). Only defendant Michaud responded to the request. On April 2, 2019, defendant Michaud stated, that he had reviewed surveillance footage and it appeared that Pena was "socializing fine." He advised Pena to tell him if things changed. *Id.*

On April 12, 2019, Pena submitted a second request to defendants Cocerrella, Cotta, Michaud, and Cook stating that his life was being threatened and he was being extorted. He reported that gang members knew that he was a "plate," was previously on rec alone status, and

4

had a sex charge. Correctional officers were verbally insulting and threatening him. Pena said that it was only a matter of time before he was assaulted again. He was afraid for his life and requested PC placement or rec alone status to ensure his safety. In response, defendant Michaud visited Pena and told him to "stop b**ching and man up." *Id.*, ¶ 32.

On April 28, 2019, Pena was assaulted in the unit day room by a member of the Bloods. *Id.*, ¶ 36. He was struck repeatedly. As a result, Pena suffers severe headaches and back pain, PTSD, anxiety, and paranoia. *Id.*, ¶ 38.

On May 1, 2019, Pena submitted request forms stating that he was being threatened by Blood members and requested protective custody. *Id.*, ¶ 40. He continues to be housed at Corrigan. *Id.*, ¶ 42.

Pena has been writing to the mental health unit seeking new treatment or increased dosages of medication. *Id.*, ¶ 44. On June 13, 2019, Pena went to the mental health unit to speak with Dr. Gagne. Defendant Brennan was present. Pena told Dr. Gagne that he was uncomfortable with defendant Brennan's presence because she was a defendant in one of his cases. Dr. Gagne said, "too bad." Dr. Gagne discontinued two medications that had been prescribed when Pena was at Walker. The medications addressed anxiety, paranoid and lack of sleep, all stemming from PTSD. *Id.*, ¶ 45.

**Discussion**

Pena asserts five claims in the Amended Complaint: (1) all defendants subjected him to an environment that placed him in harm and caused him to experience physical and mental hardship; (2) defendants Santiago, Maiga, and Brennan retaliated against him; (3) defendants Cook, Cocerrella, Cotta, Maiga, Santiago, Michaud, and Papoosha failed to protect him or were

5

deliberately indifferent to his safety; (4) defendants Gagne and Brennan were deliberately

indifferent to his mental health needs; and (5) all defendants subjected him to false imprisonment

by confining him in a restrictive housing unit. He has abandoned his Fourth Amendment strip

search claim and seeks to add an Eighth Amendment claim not included in the Complaint.

**Conditions of Confinement**

Pena included an Eighth Amendment conditions of confinement claim in the Complaint.

The Court dismissed that claim because Pena had not identified any basic human need that was

withheld or of which he was denied. Nor did he indicate how long he was subjected to the

conditions. The Court afforded Pena an opportunity to file an amended complaint to re-assert

this claim if he could allege facts addressing the identified deficiencies. Doc. No. 10 at 8-9. In

the Amended Complaint, Pena lists the same four conditions, strip searches, eating in his cell,

limited phone calls, and recreating outdoors in harsh weather. The only difference is that Pena

now alleges that he is strip-searched when he leaves his cell rather than alleging he was subjected

to purposeless strip searches. He does not indicate the duration of the conditions. Pena has not

corrected the deficiencies identified in the Initial Review Order. Accordingly, this conditions of

confinement claim is dismissed for the reasons stated in the Initial eview Order.

**Deliberate Indifference to Safety / Failure to Protect**

The Court determined in the Initial Review Order that Pena's claim for deliberate

indifference to safety or failure to protect would proceed against defendants Cook, Cocerrella,

Cotta, Michaud, and Papoosha. In his first claim, Pena alleges that the defendants placed him in

an environment that endangered his safety resulting in physical and mental hardship. The Court

construes this claim as a restatement of the deliberate indifference to safety claim which is

6

proceeding against defendants Cook, Cocerrella, Cotta, Michaud, and Papoosha.

**Retaliation**

Pena contends that defendants Santiago, Maiga, and Brennan retaliated against him. To state a retaliation claim, Pena must allege facts showing "(1) that the speech or conduct at issue was protected. (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (internal quotation marks and citations omitted).

The Court dismissed the retaliation claim against defendants Maiga and Santiago because Pena had not alleged facts establishing that Maiga and Santiago were aware of the protected activity (the lawsuit) at the time of the transfer. Doc. No. 10 at 10-11. In the Amended Complaint, Pena alleges that a few weeks before his transfer, he told defendants Maiga and Santiago about the lawsuit. By alleging facts establishing knowledge of the lawsuit, Pena has corrected the deficiencies in his retaliation claim against defendants Maiga and Santiago. This retaliation claim will proceed.

 Pena also alleges that defendant Brennan retaliated against him. Pena alleges that he named defendant Brennan in one of his other lawsuits. He does not, however, allege that Brennan took any adverse action against him. Pena merely alleges that defendant Brennan was present when he saw Dr. Gagne and that Dr. Gagne would not tell her to leave the room. As defendant Brennan took no actions against Pena, there is no factual basis for a retaliation claim. The retaliation claim against defendant Brennan is dismissed.

**Deliberate Indifference to Mental Health Needs**

Pena includes a new claim for deliberate indifference to mental health needs. To state a

claim for deliberate indifference to medical or mental health needs, Pena must allege facts showing that his needs were serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 104 (1976)).

There are objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must produce death, degeneration, or extreme pain. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Subjectively, the defendant must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of his actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983. *See id.* Nor does a disagreement over the treatment provided show deliberate indifference. *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)).

Pena alleges that he was diagnosed with mental health issues and references treatment for anxiety and paranoia as symptoms of PTSD. A combination of mental impairments, such as depression combined with severe anxiety attacks or suicide attempts, or a combination of PTSD, borderline personality disorder and antisocial personality disorder combined with suicide attempts, can constitute a serious mental health need. *See Young v. Choinski*, 15 F. Supp. 3d 172, 184 (D. Conn. 2014). Pena does not describe his condition sufficiently to enable the Court to determine whether he suffers from a serious mental health need.

8

Nor does Pena identify any action taken by defendant Brennan in relation to his treatment or his mental health needs. With regard to Dr. Gagne, he alleges only that Dr. Gagne discontinued medication prescribed at a different correctional facility. The allegations shed no light on whether Dr. Gagne possessed the requisite subjective understanding of the consequences of his action or whether the claim is merely a disagreement over treatment. These allegations do not state a plausible deliberate indifference claim against defendants Gagne and Brennan.

The Court does not, however, afford Pena an opportunity to file a second amended complaint to re-assert this claim. Federal Rule of Civil Procedure 20 permits joinder of multiple defendants in one action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences, and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Pena's deliberate indifference claim against defendants Gagne and Brennan stemming from his treatment (or lack thereof) for his mental health needs is completely unrelated to his Eighth Amendment and First Amendment claims against the other defendants. As a result, he cannot pursue the claim in this action.[2] The Court terminates Dr.

---

[2] The court notes that Rule 20 is becoming increasingly important to district courts tasked with reviewing prisoner's complaints pursuant to 28 U.S.C. § 1915A. As two commentators have noted:

> In the past, courts did not always pay much attention to this rule. However, nowadays they are concerned that prisoners will try to avoid the filing fee and "three strikes" provisions of the Prison Litigation Reform Act (PLRA) by joining claims in one complaint that really should be filed in separate actions which require separate filing fees and would count as separate "strikes" if dismissed on certain grounds.

John Boston & Daniel E. Manville, Prisoners' Self-Help Litigation Manual 348 (4th ed. 2010) (collecting cases).

Gagne as a party and severs this claim against defendant Brennan. *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party" or "sever any claim against a party" based on misjoinder). Pena may pursue his deliberate indifference to mental health needs claim in a separate action if he chooses to do so.

### False Imprisonment

Pena reasserts his state law claim for false imprisonment based on his transfer to harsher conditions of confinement. The Court dismissed the false imprisonment claim because Pena had been confined for over a year before his transfer and thus, was not deprived of his liberty. ECF No. 10 at 13-14. Pena alleges no new facts regarding this claim. Accordingly, the claim remains dismissed for the reasons stated in the Initial Review Order.

## Orders

For all the foregoing reasons, the retaliation claim against defendants Santiago and Maiga is revived. As the injunctive relief requested in the Amended Complaint, removal from SRG designation and restoration of privileges and good time, is unrelated to the retaliation claim, the claim against defendants Santiago and Maiga will proceed against them in their individual capacities only.

The claims for unconstitutional conditions of confinement which are unrelated to failure to protect and false imprisonment are dismissed for the reasons stated in the Initial Review Order. The retaliation claim against defendant Brennan is dismissed pursuant to 28 U.S.C. § 1915A(b)(1). Any possible deliberate indifference to mental health needs claim against defendants Gagne and Brennan is severed pursuant to Federal Rule of Civil Procedure 21 and dismissed from this action. If Pena wishes to pursue this claim, he may do so in a separate

10

action.

The case will proceed only on the claim for deliberate indifference to safety or failure to protect against defendants Cook, Cocerrella, Cotta, Michaud, and Papoosha in their individual and official capacities and the retaliation claim against defendants Santiago and Maiga in their individual capacities.

The Clerk shall verify the current work addresses for defendants Santiago and Maiga with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If either defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

All other deadlines set in the Initial Review Order remain in effect. The Clerk is directed to send a courtesy copy of this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Pena.

**SO ORDERED** at Bridgeport, Connecticut, this 12th day of July 2019.

/s/ Kari A. Dooley

Kari A. Dooley
United States District Judge

11