UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES L. PENA, : | |
|      Plaintiff, : | |
| : | |
| v. : | CASE NO. 3:19-cv-825 (KAD) |
| : | |
| COOK, et al., : | |
|      Defendants. : | |

**MEMORANDUM OF DECISION**

Kari A. Dooley, United States District Judge

     The plaintiff, James L. Pena ("Pena"), commenced this civil rights action asserting claims related to his safety in prison. Following initial review of the Amended Complaint, two claims remain, a claim against defendants Cook, Corcella, Cotta, Michaud, and Papoosha for deliberate indifference to safety or failure to protect and a retaliation claim against defendants Santiago and Maiga. Order re Amended Complaint, Doc. No. 15 at 11. All defendants ("the Defendants") have filed a motion for summary judgment on the ground that Pena failed to properly exhaust his administrative remedies before commencing this action and because the retaliation claim fails as a matter of law. For the following reasons, the motion is GRANTED.

**Standard of Review**

     A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are

material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense …." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Facts[1]**

---

[1] The facts are taken from the Defendants' Local Rule 56(a) Statement and supporting exhibits submitted by both parties. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each admission or

2

Pena was sentenced on November 28, 2018 and transferred to MacDougall-Walker Correctional Institution ("MWCI") the following day. Defs.' Local Rule 56(a)1 Statement, Doc. No. 39-2, ¶ 6. He was designated a member of the Security Risk Group ("SRG") Bloods. *Id.* ¶ 7. In January 2019, Pena was temporarily transferred to Massachusetts. *Id.* ¶ 8. On February 14, 2019, Pena returned to MWCI and was again housed in the SRG Program. *Id.*

Inmates in the SRG Program are classified to one of five phases. *Id.* ¶ 9. Inmates in phase 1, the most restrictive phase, are housed at Northern Correctional Institution and inmates in phase 2 are housed in the Walker building at MWCI. *Id.* ¶ 10. Inmates in phases 3-5 are confined in the Corrigan building ("Corrigan") at Corrigan-Radgowski Correctional Center. *Id.* ¶ 11.

When Pena returned to Connecticut in February 2019, John Aldi, who was then the SRG Coordinator, reviewed his SRG classification and recommended that Pena advance to phase 3 of the SRG Program. *Id.* ¶¶ 12-13. This phase advancement resulted in Pena's transfer to Corrigan, where phase 3 inmates generally are housed. *Id.* ¶ 14. Pena was transferred on March 28, 2019. *Id.* ¶ 15. Relevant to the claims brought herein, it is this March 28, 2019 transfer that

---

denial must include a citation to an affidavit or other admissible evidence. In addition, the opposing party must submit a list of disputed factual issues. D. Conn. L. Civ. R. 56(a)2 and 56(a)3.

The Defendants informed Pena of this requirement. *See* Notice to Self-Represented Litigant Concerning Motion for Summary Judgment, Doc. No. 39-3. Although Pena has filed several documents entitled Statements of Disputed Facts, Doc. Nos. 40, 43, no document contains the required admissions or denials and citations to record evidence. As Pena has not filed a proper Local Rule 56(a)2 Statement, the Defendants' facts are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2.").

The court also considers Pena's several declarations as well as the verified Amended Complaint which may be considered as an affidavit for summary judgment purposes. *See Curtis v. Cenlar* FSB, 654 F. App'x 17, 20 (2d Cir. 2016) ("Though we may treat [plaintiff's] verified complaint 'as an affidavit for summary judgment purposes,' the allegations contained therein can suffice to defeat summary judgment only insofar as they were made on personal knowledge.") (quoting *Conlon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

forms the basis for the Retaliation claim against defendants Santiago and Maiga. However, the decision to transfer Pena was made by Aldi and the unit manager of the MWCI SRG unit, Counselor Supervisor Brian Stanley. *Id.* ¶ 16.

At Corrigan, on April 28, 2019, Pena was involved in a physical altercation with an SRG Bloods member. *Id.* ¶ 19. Relevant to the claims brought herein, it is the alleged assault on April 28, 2019 which forms the basis for the Eighth Amendment failure to protect claim. Pena alleges that, before the altercation, he wrote to defendants Cook, Corcella, Cotta, Michaud, and Papoosha about his fear of being targeted by SRG members. *Id.* ¶ 20.

On February 14, 2019, Pena was placed on grievance restriction for abuse of the administrative remedy process. *Id.* ¶ 50. As a result, Pena was restricted to filing one grievance per month through July 23, 2019. *Id.* Pena commenced this action with the filing of the Complaint on May 30, 2019.

**Discussion**

The Defendants contend that Pena failed to properly exhaust his administrative remedies on either claim before commencing this action and that the retaliation claim lacks merit.

The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies before filing a federal lawsuit relating to prison conditions. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).

Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006) (proper exhaustion "means using all steps that the agency holds out ... (so that the agency addresses the issues on the merits) ... [and] demands compliance with agency deadlines and other critical procedural rules"). An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1858 (2016).

Exhaustion of administrative remedies is an affirmative defense. Thus, the defendants bear the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 16 (2007). Once the defendants establish that administrative remedies were not exhausted before the inmate commenced the action, the plaintiff must establish that the administrative remedy procedures were not available to him under *Ross*. *See id.*

The administrative remedies for the State of Connecticut Department of Correction are set forth in Administrative Directive 9.6. *See* Defs.' Mem. Ex. F, Administrative Directive 9.6, Inmate Administrative Remedies (revised August 15, 2013). Each request for administrative remedy must be submitted on a separate form. *See id.* at 9.6(5)(E)(2). The request and action sought must be stated clearly and simply. *See id.* at 9.6(5)(E)(3).

An inmate must first attempt to resolve the matter informally. He may attempt to verbally resolve the issue with an appropriate staff member or supervisor. *See id.* at 9.6(6)(A). If attempts to resolve the matter orally are not effective, the inmate must make a written attempt

using a specific form, CN 9601, and send that form to the appropriate staff member. *See id.* If an inmate does not receive a response to the written request within fifteen business days or the inmate is not satisfied with the response to his request, an inmate may file a Level 1 grievance. *See id.* at 9.6(6)(C).

The Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *See id.* The Unit Administrator shall respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. *See id.* at 9.6(6)(I).

The inmate may appeal the disposition of the Level 1 grievance by the Unit Administrator, either a denial or rejection, or the Unit Administrator's failure to dispose of the grievance in a timely manner to Level 2. *See id.* at 9.6(6)(G), (I) & (K). The Level 2 appeal of a disposition of a Level 1 grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. *See id.* at 9.6(K). A Level 2 appeal of the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner must be filed within sixty-five days from the date the Level 1 grievance was filed by the inmate. *See id.* at 9.6(M). Level 2 appeals of inmates confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator. *See id.* at 9.6(6)(K). The District Administrator is required to respond to the Level 2 appeal within thirty business days of receipt of the appeal. *See id.*

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure or Level 2 appeals to which there has been an untimely response, or no

response, by the District Administrator. *See id.* at 9.6(6)(L). A Level 3 appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level 2 appeal. *See id.* A Level 3 appeal of the District Administrator's failure to dispose of the Level 2 appeal in a timely manner must be filed within thirty-five days of the filing of the Level 2 appeal. *See id.* at 9.6(6)(M). A Level 3 appeal is reviewed by the Commissioner of Correction or his or her designee with a response provided within thirty business days of receipt of the Level 3 appeal. *See id.* at 9.6(6)(L).

The Defendants assert that correctional records show that Pena filed only two Level 1 grievances from February 2019[2] through May 2019.[3] The first, signed February 16, 2019, and received February 20, 2019, concerns Pena's classification as an SRG member, an issue not raised in this action. Defs.' Mem. Ex. G. The second grievance is dated April 21, 2019 but was not received until May 1, 2019. *Id.* Ex. H. This Grievance is assigned "IGP Number" 140-19-108. Therein, Pena states that, on March 29, 2019, he sent requests to defendant Papoosha, the warden, deputy warden, and commissioner stating that he has been on rec-alone status at MWCI because he had been assaulted by a Blood member. He claimed that he was transferred to Corrigan even though correctional officials knew that gang members labeled him a "plate" because of his charges and because he was "not banging." *Id.* The grievance was rejected because it was received more than thirty days after Pena's March 28, 2019 transfer. *Id.* Notably, although Pena complains of his transfer, he does not assert that the transfer was retaliatory, only that it was ill advised due to the threat posed to him at Corrigan. The Defendants have no record

---

[2] The first act complained of is the March 28, 2019 transfer to Corrigan so grievances filed before then have little or no bearing on the exhaustion issue.

[3] This action was commenced on May 30, 2019. Any grievance procedures pursued after that date are similarly irrelevant to the exhaustion issue.

7

of Pena filing an appeal of this rejection of his grievance. *Id.* Ex. A, Decl. of Michelle King, ¶ 9. The Defendants assert that they did not locate any grievances filed following the April 28, 2019 altercation which gives rise to the Eighth Amendment claim.

Notwithstanding the sworn affidavit of Michelle King, Pena submits copies of additional grievance documents he states he filed but which were ignored. He submits a copy of a Level 2 appeal dated May 15, 2019 which references his grievance assigned IGP Number 140-19-108, the grievance rejected as untimely.[4] Therein, he states that he is being targeted because of his lawsuit and that his request to return to rec-alone status or for placement in protective custody were ignored. Pl.'s Statement of Disputed Factual Issues, Ex. 4, Doc. No. 40 at 19. In addition, Pena submits copies of three other Level 1 grievances. The first, dated April 17, 2019, states that he was removed from rec-alone status and transferred in retaliation for his lawsuit. *Id.* at 15-16. The second, dated May 7, 2019, and third, dated May 1, 2019, both claiming that correctional officials failed to protect him from assault, were returned without disposition as violating the grievance restriction. *Id.* at 20-21, 22-23 & Doc. No. 42 at 5-11.

Even accepting that Pena filed these additional grievances, he has not exhausted his administrative remedies. First, Pena provides evidence that he filed only one Level 2 appeal which specifically referenced the May 1, 2019 transfer grievance that was rejected as untimely. That grievance related only to the decision to remove Pena from rec alone status and to transfer him to Corrigan. The purported appeal is dated May 15, 2020. The District Administrator is required to respond to a Level 2 appeal within thirty business days of receipt of the appeal. *See* A.D. at 9.6(6)(K). There is no indication that this appeal was acted upon and indeed, the

---

[4] The copy attached to Pena's submission contains no indication that it was received by DOC staff.

Defendants aver that they have no record of this appeal. In any event, this action was commenced on May 30, 2019 only 15 days after the purported filing of the Level 2 appeal and 15 days shy of the District Administrator's deadline to respond. Thus, Pena has not exhausted his administrative remedies with respect to his retaliation claim.[5]

As to the claims arising out of the April 28, 2019 assault, it is equally clear that Pena did not exhaust his administrative remedies. Most notably, it would be impossible to exhaust the administrative procedures contemplated in A.D. 9.6 in the thirty-two (32) days that passed between the date of the assault and the filing of the instant Complaint. Notwithstanding, Pena attaches Level 1 grievances dated May 1, 2019 and May 7, 2019, both of which were returned to him without disposition because they violated his grievance restriction.[6] Accordingly, he asserts that exhaustion was thwarted and his failure to exhaust should be excused.

However, Pena's grievance restriction did not prevent him from exhausting his administrative remedies. Directive 9.6(6)(C) states that the grievance must be filed within thirty days from the incident and states that inmates shall deposit the grievance in the Administrative Remedies box in the housing unit. The grievances are collected on a daily basis. This means that Pena had until April 28, 2019 to file a grievance regarding his transfer to Corrigan. Such a grievance could have been submitted in March (on the 29th, 30th or 31st) or in April. Pena also had until May 28, 2019 to file a grievance stemming from the assault. Such a grievance could

---

[5] As noted, the grievance purportedly appealed did not actually claim retaliation as the motive for his transfer although such an accusation does appear in the Level 2 appeal submitted.

[6] It is very troubling to the Court that the Defendants submit sworn testimony that these grievances were not filed. They clearly were as they reflect action by DOC personnel in response to them. These grievances do not appear in the grievance log and apparently copies were not maintained such that Michelle King's review of the records would reveal these grievances. If grievances returned without disposition are exempted from the record keeping practices outlined in the King Affidavit, such should be made clear. On this record the King Affidavit is at best, misleading and at worst simply false.

have been submitted in April (on the 29th or 30th) or in May. Accordingly, as he was permitted one grievance per month, the restriction did not impact his ability to file grievances as to both events.[7] *See, Seiler v. Semple,* 2018 WL 3935033 *3 (D. Conn. August 16, 2018)(Concluding that despite a grievance restriction limiting the Plaintiff to one grievance per month, the grievance procedures remained available to the Plaintiff with respect to the claims ultimately brought in the lawsuit.).

The Defendants' motion for summary judgment [**Doc. No. 39**] is **GRANTED** for the reasons stated.

The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 26th day of October 2020 at Bridgeport, Connecticut.

                                        /s/
                                        Kari A. Dooley
                                        United States District Judge

---

[7] Pena also submits a purported grievance dated April 17, 2019 which addresses his allegedly retaliatory transfer to Corrigan as evidence of his ignored efforts to exhaust his administrative remedies. As noted, the Defendants have no record of having received this grievance. However, even assuming that this grievance was filed on April 17, 2019, the response to it was not due until May 17, 2019. And only after not receiving a timely response could Pena bring a Level 2 appeal. This action was commenced on May 30, 2019 rendering it impossible for the administrative procedures to have been exhausted as to this grievance.